### BONNER et al. v. SMITH et al.
### No. 3423.

United States District Court
E. D. Oklahoma.
Sept. 15, 1953.

Paul & McPheron, Durant, Okl., for plaintiffs.

Charles R. Nesbitt, Oklahoma City, Okl., for defendants.

WALLACE, District Judge.

The plaintiffs, Thea Bonner and Lee Statler, citizens of Oklahoma, have filed a motion to remand this action to quiet title to the District Court of Coal County, Oklahoma, the court in which this action originally was instituted.

The removing defendants, Mrs. Clay Smith, James C. Statler, Mrs. Cecil Morgan and William Stewart Statler, citizens of Texas, urge that although certain resident defendants are joined in this action that this Court has jurisdiction for the reason that a "separate and independent controversy" exists between the resident plaintiffs and the nonresident removing defendants.[1] Contrarily, plaintiffs insist that only

1. 28 U.S.C.A. § 1441, which deals with actions removable generally, provides: "(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-re-

a single issue or controversy is involved, the merchantability of plaintiffs' title, and, that all parties defendant, resident and non-resident are indispensable to the complete adjudication of this lone issue.[2]

 The Court believes that the plaintiffs improperly apply the principle of indispensability due to a misconception of the true nature of actions to quiet title. Although any person whose right may cast a cloud upon a title must be included in an action to quiet title in order to achieve marketability under the court's final decree, parties having claims based upon different sources of title or by virtue of liens springing forth from distinct origins may as between any two parties or classes of parties litigate their differences without the joinder of other claimants.[3] As between the parties there can be a final determination of the controversy without the presence of others;[4] in relation to each other none of the definable classes of parties having a right in connection with a title fall within the scope of the definition of an indispensable party as sanctioned by our Court in Choctaw and Chickasaw Nations v. Seitz; that is, "one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience."[5] Thus, in the instant case, the plaintiffs could bring an action against the different resident lienholders without joining the nonresident defendants who make a claim to title from a common origin; or conversely, the plaintiffs could bring suit against the nonresident title claiming defendants without joining the resident lienholders. Either cause could be prosecuted to completion and result in the quieting of title between the parties, although of course without prejudice to the rights of the claimants not made parties to the suit. All persons having rights which cast clouds upon a title are certainly proper parties and their joinder is highly desirable from the viewpoint of plaintiffs' convenience, but the absence of one or more does not defeat the court of jurisdiction.

The Oklahoma statute which authorizes the joining of claimants regardless how varied the bases for claim be, recognizes the expediency of such a joinder.[6] How-

movable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

2. The question is whether the removing defendants have a controversy "which can be fully adjudicated between parties of diverse citizenship, and as to which no other party is necessary or indispensable." Oldland v. Gray, 10 Cir., 1950, 179 F.2d 408, 412.

3. The Oklahoma rule is well settled that a plaintiff in a quiet title action need not show a perfect or complete title, but merely that his title is superior to that of the adversary selected as defendant. Smith v. Reneau, 1941, 188 Okl. 629, 112 P.2d 160; Keith v. Lawson, 1945, 195 Okl. 157, 155 P.2d 716; Robertson v. Knighten, 1943, 192 Okl. 678, 139 P. 2d 601.

4. Cf. Oldland v. Gray, n. 2, supra; Preston v. Kaw Pipe Line Co., 10 Cir., 1942, 128 F.2d 162.

5. 10 Cir., 1951, 193 F.2d 456, 458. Although this definition arose in connection with a challenge of Court's jurisdiction due to an alleged "failure to join an indispensable party" the principle is applicable in the instant "removal" case.

6. 12 Okl.St.Ann. § 1141 provides: "An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or any interest therein adverse to him for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession."
See 68 Okl.St.Ann. § 988 in regard to the Determination of State's Lien which states: "In any action to determine heirs, partition real estate, quiet title thereto, foreclose a lien thereon, or any combination thereof, where such title has been derived wholly or in part, directly or remotely, by inheritance, devise, or gift made in contemplation of death, from any deceased person, the

ever, this procedural statutory authority to join various claims does not of itself merge the separate and independent claims into a singular substantive claim.[7]

Although section 1441(c) [8] in effect since 1948, permits the removal of a separate cause of action but not of a separable controversy unless it constitutes a separate and independent claim, the quiet title decisions rendered under the earlier sections dealing with removability of "separable controversies" lend considerable aid in appraising the inherent nature and character of actions to quiet title.

In the early case of Bates v. Carpentier,[9] where the action was brought against a number of defendants for the purpose of obtaining an adjudication of all claims adverse to the complainant, the Court held that the suit was severable as to each defendant. In refuting the plaintiff's argument that the removing defendant had no right to make *several* a claim which plaintiff had chosen to make *joint*, the Court said: [10]

" * * * the plaintiff does not aver that all the defendants claim title to the realty jointly, or under one common source of title. He brings the various named defendants into the suit for the purpose of determining and adjudicating each and every claim or interest they may set up adverse to his own, no matter how diverse or opposed to each other. And where an action is brought by one plaintiff against several defendants, not because they claim any joint interest or are subject to any joint liability in respect to the subject-matter of the action, but merely for convenience, it will generally be capable of resolution into separable controversies between the plaintiff and the individual defendants. * * *"

The instant case is susceptible to the same logic. There is no assertion that the resident and removing nonresident defendants claim title jointly or under one common source; although all claims of defendants are adverse to plaintiff such claims are also diverse and adverse between and among the separate classes of defendants.

A similar analyses is made in Carothers v. McKinley Mining & Smelting Co. wherein the Court said: [11]

"It follows from these general principles that where a cause of action, whether on a contract or in tort, is joint, or joint and several, and is declared on jointly, the defendants could not, by alleging separate defenses, make the cause of action separable, within the meaning of the removal act. *But in the present case the plaintiff did not elect to make his cause of action joint against all of the defendants. His bill of complaint to quiet title was not filed to settle a single controversy. The suit was brought for the purpose of settling any and all adverse titles held by each of the defendants. It calls upon them, under appropriate averments, to set up each and every claim, demand, or source of right or title held by them or each of them. There is no averment that the defendants claim under any common source of title or of right."* (Emphasis supplied.)

In McMullen v. Halleck Cattle Co., the plaintiff sued to quiet title to the use of a portion of the waters of a creek, and made

---

State of Oklahoma may be made a party defendant for the purpose of determining its claim against the estate of such deceased person for inheritance or transfer taxes. * * *" Also, see, 84 Okl. St.Ann. § 257.

7. See Pullman Co. v. Jenkins, 1939, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334.

8. Footnote 1, supra.

9. C.C.Cal., 1899, 98 F. 452.

10. 98 F. at page 454. Accord, Bacon v. Felt, C.C.Iowa, 1889, 38 F. 870. See, al-

so, Stuart v. Colorado Eastern R. Co., 1916, 61 Colo. 58, 156 P. 152, 155, wherein the court said: "Where an action to quiet title is instituted in a state court against two railroad companies, one a domestic and the other a foreign corporation, each of which is operating a distinct and separate line of road across the land, and there is no allegation that these interests are joint, or in any way related, the cause is severable".

11. C.C.Nev., 1902, 116 F. 947, 950.

defendants ten persons, all arranged in groups, one of which was the removing defendant, a nonresident cattle company. The complaint gave no indication that the appropriation or claim of the different groups of defendants was in any way connected with each other, except that each defendant was interested in the same stream, the waters of which were insufficient to answer the aggregate demands of all. The Court reasoned:[12]

"The present case can be separated into parts so as to leave a separate and distinct cause of action between Samuel McMullen, a citizen of Nevada, and Halleck Cattle Company, a citizen of California. On this cause of action a separate and distinct suit could have been brought, and the full nature and extent of the company's claim to the use of said 25 cubic feet per second of the waters of Boulder creek could be determined as against complainant, without the presence of any other defendant as party to the controversy."

■ The separate and independent claims of various classes of defendants in quiet title actions must not be confused with the joint nature of claims recognized by the courts where the action is specifical-

ly limited to ejectment.[13] In differentiating between ejectment and a suit to quiet title in regard to separability the Supreme Court of Colorado in Miller v. Buyer remarked:[14]

"The claim of defendant in error is that the controversy is not separable. He says that the single question is whether plaintiff owns the property. Not so. That would be so in ejectment, but to quiet title each defendant is called upon to come in and set up his claim to the property. * * * A.'s claims may be good, B.'s bad, and C.'s partly good and partly bad. D. may default, E. disclaim, and X. may intervene. Y. and Z. may join in defense. These things happen often in such actions. The rights of none are dependent on the action or right of any other. *If any action is separable, an action to quiet title must be.*" (Emphasis supplied.)

Where, as here, the plaintiff joins the resident defendants for the sole purpose of barring any claim of lien for unpaid ad valorem and inheritance taxes certainly such claims are separate and independent from the claim to title advanced by the nonresident defendants.[15] The nonresi-

12. C.C.Nev., 1910, 193 F. 282, 284. Contra, Davey v. Yolo Water & Power Co., D.C.Cal., 1913, 211 F. 345. Cf. Lomax v. Foster Lumber Co., 5 Cir., 1909, 174 F. 959. The Lomax case is distinguishable from the instant case in that the gist of the Lomax action was ejectment; a slight distinction further lies in the fact that the resident defendants in the Lomax case allegedly claimed title whereas in the instant case the resident defendants, at most, assert a tax lien.

13. Thus in Hoffman v. Metz, D.C.Pa., 1940, 31 F.Supp. 204, in an ejectment action against a Pennsylvania resident and a New Jersey corporation to determine title to Pennsylvania land, wherein declaration alleged that defendants, acting in concert, had taken possession of the land, the Court held a "separable controversy" did not exist. Cf. Preas v. Phebus, 10 Cir., 1952, 195 F.2d 61, where a joint cause of action was alleged against all defendants.

However, see Stanbrough v. Cook, C. C.Iowa, 1889, 38 F. 369, 373, 3 L.R.A. 400, in an action brought for the im-

mediate recovery of possession under an Iowa statute for settling all adverse claims where the Court in holding the action separable said: "* * * The petition is not framed for the purpose of narrowing down the issues triable thereon to one title or source of title, but, on the contrary, brings all the named parties into the suit as defendants, for the purpose of adjudicating every adverse interest or claim to the realty, no matter how diverse or antagonistic to each other they may be. The decisions, therefore, defining the rule applicable to suits based upon joint or joint and several causes of action, do not touch a case of the peculiar character now before the court, for the reason that the petition in this cause does not seek to declare against all the defendants jointly."

14. 1927, 82 Colo. 474, 261 P. 659, 660.

15. See opinion of Judge Murrah in Willoughby v. Sinclair Oil & Gas Co., 10 Cir., 1951, 188 F.2d 902, 904, 905, in regard to suggested tests for what constitutes "separate and independent" controversies under the 1948 revision.

dcnt defendants are eligible to have their separate issue tried in the federal court.

Plaintiffs' "Motion to Remand" is hereby overruled.